IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UDR OF TENNESSEE, L.P., <br><br> Plaintiff, <br><br> v. <br><br> MDG ZAREMBA SAMMYTOWN, LLC, <br> and ZAREMBA CONTRACTORS, LLC, <br><br> Defendants. | § <br> § <br> § <br> § <br> §    CIVIL ACTION NO.: _____ <br> § <br> § <br> § <br> § <br> § |

**PLAINTIFF UDR OF TENNESSEE, L.P.'S ORIGINAL COMPLAINT**

Plaintiff UDR of Tennessee, L.P. submits this Original Complaint against Defendants MDG Zaremba Sammytown, LLC and Zaremba Contractors, LLC.

## I.
## PARTIES

1. UDR of Tennessee, L.P. ("UDR") is a Virginia limited partnership, with its principal place of business in Highlands Ranch, Colorado. UDR also has a place of business located in Addison, Texas.

2. MDG Zaremba Sammytown, LLC ("Zaremba") is a Florida limited liability company with its principal place of business in Lakewood, Ohio. Zaremba may be served with process by service on its registered agent, CT Corporation System, at 1200 South Pine Island Road, Plantation, Florida 33324.

3. Zaremba Contractors, LLC ("Zaremba Contractors") is a Delaware limited liability company with its principal place of business in Lakewood, Ohio. Zaremba Contractors

may be served with process by service on its registered agent, Walter Zaremba, at 14600 Detroit Avenue #1500, Lakewood, Ohio 44107.

## II.

## JURISDICTION

4.   This court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because UDR is a citizen of Maryland and Colorado for diversity jurisdiction purposes, and Virginia limited partnership with its principal place of business in Colorado, and, on information and belief, both Zaremba and Zaremba Contractors are citizens of Delaware and Ohio for diversity jurisdiction purposes.  Further, UDR's damages exceed $75,000.00.

## III.

## VENUE

5.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a significant part of the acts and omissions of which Plaintiff complains occurred in this District.

## IV.

## BACKGROUND FACTS

6.   Zaremba was the owner of real property located at 801 North Rome Avenue in Tampa, Florida (the "Property").  On or about February 28, 2007, Zaremba entered into an Agreement of Purchase and Sale (the "Original Agreement") with DCO Realty, Inc. ("DCO Realty"), which was an UDR related entity.  On or about August 26, 2008, Zaremba and DCO Realty entered into an Amended and Restated Agreement of Purchase and Sale (the "Amended Agreement").  A true and correct copy of the Amended Agreement is attached as Exhibit "A" to this Complaint.  Collectively, the Original Agreement and Amended Agreement will be referred to as the "Development Agreement."  A significant amount of the negotiations with Zaremba

over the terms of the Development Agreement were handled by DCO Realty representatives in Dallas, Texas.[1] Tom Lamberth, a DCO Realty representative in the Dallas office, was listed as a party representative in the Development Agreement. Mr. Lamberth is also a representative of UDR.

7. Subsequent to the signing of the Amended Agreement, DCO Realty assigned the Development Agreement to UDR, which was a related entity.

*Zaremba's Responsibilities Under The Development Agreement*

8. Under the Development Agreement, UDR agreed to purchase the Property from Zaremba. In turn, Zaremba agreed to act as the developer and management agent to organize, coordinate, and administer the construction of an apartment complex on the Property, which is now known as The Vintage Lofts at West End (the "Project"). The Development Agreement identified Zaremba Contractors, a related entity with Zaremba, as the general contractor that would construct the Project.

9. The Development Agreement required Zaremba to be responsible for virtually every aspect of the design and construction of the Project both prior to and after the closing of the sale to UDR. For instance, in Sections 3.3 and 3.5 of the Development Agreement, Zaremba accepted responsibility for, among other things:

    A. supervising and overseeing the finalization of the plans of the Project;

    B. maintaining insurance coverage for all design professionals, contractors, and subcontractors; and

    C. conducting regular and frequent inspections of the work on the Project to verify that the work was being performed in accordance with the Project's plans and specification, the construction contract, and the Project schedule.

---

[1] As noted in Paragraph 1 of this Complaint, UDR currently has an office in Addison, Texas. However, at the time of the negotiation of the Development Agreement, UDR's offices were located in Dallas, Texas.

**PLAINTIFF UDR OF TENNESSEE, L.P.'S ORIGINAL COMPLAINT - Page 3**

10. The Development Agreement also contained several warranties and covenants related to the construction of the Project, including the following covenant set forth in Section 5.1(a):

> (a) <u>Construction of Improvements</u>.  Seller shall construct and install, or cause to be constructed and installed, all of the Improvements shown on the Site Plan and/or the Approved Plans and Specifications, and shall cause the same to be constructed and completed: (i) *substantially in accordance with the Approved Plans and Specifications* and in the locations shown on the Site Plan; (ii) in compliance with all Applicable Laws (including, without limitation, the zoning requirements and Variances applicable to the Apartment Complex), and in accordance with the provisions of, and the time requirements set forth in, the Permits and Building Certificates; (iii) *in a good and workmanlike manner; and (iv) using new and/or first-class materials* (except as may otherwise be expressly provided in the Approved Plans and Specifications).  In addition, Seller shall use its commercially reasonable efforts to cause the construction and development of the Improvements to be pursued and completed in accordance with the schedules and deadline dates set forth in the attachments and exhibits to the this Agreement. . . .

(Emphasis Added)

11. In Section 5.1(e) of the Development Agreement, Zaremba also promised to, "[O]btain, for the benefit of [UDR], standard and customary construction warranties and guarantees, from all manufacturers and contractors providing goods and/or services in connection with the construction and installation of the Improvements."

12. In Section 9.2 (among other places) of the Development Agreement, Zaremba agreed to indemnify UDR for damages that UDR incurred as a result of the construction or development of the Project.

13. The Development Agreement identified Urban Studio Architects, Inc. ("Urban Studio") as the architect for the Project, and Zaremba Contractors as the general contractor for the Project.  Under the terms of the Development Agreement, the contract with Zaremba Contractors was to be provided to UDR, but Zaremba did not provide this document.  The

Development Agreement identified the contract between Zaremba and Zaremba Contractors as an AIA contract. On information and belief, UDR believes the contract between Zaremba and Zaremba Contractors required Zaremba Contractors to indemnify UDR for damages related to the negligence of Zaremba Contractors and its subcontractors.

*Transfer Of Project Ownership*

14. During construction of the Project, some of Zaremba Contractors' subcontractors and/or suppliers filed liens against the Property. This led to UDR, Zaremba, Zaremba Contractors, and the property management company, Zaremba Group, L.L.C., ("Zaremba Group") entering into a June 19, 2009 agreement (the "June 2009 Agreement") that, among other things, addressed a process for the Parties to address and resolve the lien claims. A true and correct copy of the June 2009 Agreement is attached as Exhibit "B" to this Complaint. In addition, in the June 2009 Agreement, Zaremba Contractors specifically promised UDR that Zaremba Contractors would complete the construction on the Project in accordance with the Project's plans and specifications, and would perform its obligations pursuant to the construction contract between Zaremba and Zaremba Contractors.

15. UDR took over the operations at the Property on or about July 1, 2009. Urban Studio issued an AIA G704 Certificate of Substantial Completion and declared the Project substantially complete as of July 13, 2009.

16. When UDR took ownership of the Project in the summer of 2009, UDR created a punch list of issues for Zaremba to address. UDR's punch list included issues related to some roof leaks that had been observed by UDR representatives. On information and belief, Zaremba had Zaremba Contractors address UDR's punch list, and Zaremba Contractors had its roofing subcontractor, Quality Roof Systems, Inc. ("QRS"), make repairs to the roof.

*UDR Discovers Roof Leaks*

17. In late 2009, UDR discovered additional roof leaks. UDR attempted to contact QRS directly concerning the new roof leaks, but discovered that QRS was no longer in business. As a result, UDR was forced to hire another roofing contractor to repair the leaks.

18. Around this same time, UDR contacted the roofing manufacturer, GAF, to ask GAF to inspect and review the roof. UDR contacted GAF because at some point after the construction of the Project, Zaremba had provided UDR with a copy of a roof warranty allegedly issued by GAF. GAF, however, informed UDR that the GAF warranty provided by Zaremba for the Project's roof was invalid and GAF disclaimed any responsibility for the roof.

19. When the summer rainy season began in 2010, UDR discovered even more roof leaks at the Property. On or about August 23, 2010, Tom Lamberth, on UDR's behalf, notified Zaremba of UDR's concerns related to the roof and the potential for water infiltration issues. Mr. Lamberth's letter also sought Zaremba's assistance in obtaining a valid warranty for the roof. Representatives of Zaremba and/or Zaremba Contractors visited the Project after receiving Mr. Lamberth's letter, but ultimately took no action to either repair the roof problems or provide UDR with a valid roof warranty.

*UDR Hires Experts To Investigate The Roof Leaks*

20. Since Zaremba refused to either repair the roof or provide UDR with a valid roof warranty, UDR engaged Building Engineering-Consultants, Incorporated ("BECI") to conduct an inspection and advise UDR on the cause and origin of the water infiltration issues. During the course of its investigation, BECI discovered several deficiencies related to the construction of the Project that are causing water infiltration into the buildings and contributing to the premature

deterioration of building components. The deficiencies reported by BECI, include, but are not limited to, the following:

(A) Roofing Issues
- Failed seams in the roof membrane.
- Fish mouths in the roof membrane and flashings.
- Moisture under the roof membrane.
- Improper repair areas.
- Building code violation with respect to the scupper heights.
- Unsealed scuppers.
- Improper pitch pockets.
- Improperly installed flashings.
- Improper roof terminations.
- Missing sealant at the outside of the parapet cap.
- Ponding water on the roof membrane.
- Improper termination of metal roof-to-wall.

(B) Cladding system deficiencies
- Disbonded and cracked stucco cladding.
- Discontinuous, missing, and cracked control joints in the stucco.
- Cladding extends below grade.
- Cracking at butt joints in the EIFS decorative bands.
- Damage to the EIFS decorative bands.
- Missing, failed, discontinuous, and improperly installed sealants.
- Efflorescence at the brick veneer cladding.
- Unsealed joints at openings in brick.

(C) Cracks in the concrete wear slab were observed on the balconies and walkways.

(D) Other deficiencies include, but are not limited to:
- Unsealed wooden support for small metal roof section.
- Rusted attachments of beams in parking garage.

21. All of the defective conditions identified by BECI have to be repaired for the Project to comply with the original plans and specifications, and achieve a watertight and weatherproof condition.

22.     By letter dated August 12, 2011, UDR, through its counsel, notified Zaremba and Zaremba Contractors of the defective conditions identified by BECI.  UDR's counsel also notified Zaremba and Zaremba Contractors that UDR was moving forward with BECI's recommended repairs.  UDR's counsel also provided Zaremba and Zaremba Contractors with the contact information for a UDR representative in Addison, Texas so that Zaremba and/or Zaremba Contractors could arrange another inspection if they so desired.  Thereafter, representatives of Zaremba and/or Zaremba Contractors inspected the Project to view the construction defects identified by BECI.  In addition, experts hired by Zaremba and/or Zaremba Contractors and representatives of Zaremba's and/or Zaremba Contractors' insurance carriers have inspected the Project.  Despite these opportunities to inspect and view the construction defects at the Project, neither Zaremba nor Zaremba Contractors have acknowledged any liability for the defects at the Project.  Likewise, no offer to pay for the repair of the defects at the Project has been made by Zaremba, Zaremba Contractors', or their insurance carriers.

*Repairs To The Project*

23.     In October of 2011, UDR hired DBK Construction Group, Inc. ("DBK") to perform the repairs recommended by BECI.  Once DBK began to remove portions of the roof at the Project, BECI identified additional damages caused by water infiltrating the building through the defective roof.  As a result, the scope of repairs has increased to include replacement of stucco and rotting wood.  In addition, in the concrete parking garage, UDR has discovered areas where chunks of concrete have come loose.  UDR is still in the process of investigating the cause of, and the repair method for, these concrete problems.  In addition to the amounts paid to DBK for repairs at the Project, UDR has incurred costs for BECI to investigation the construction defects, and prepare a report and repair documents.  UDR has also incurred significant expense

for UDR personnel to oversee and address the repairs at the Project. In all, UDR estimates that its damages related to repairing the known construction defects at the Project will exceed $3,100,000. If more construction defects are discovered at the Project, UDR's damages related to repairing the known construction defects will increase.

24. The construction repairs have also resulted in UDR incurring damages related to tenants: (i) terminating their leases; (ii) not renewing their leases; and (iii) requesting rent concessions. UDR has also incurred damages related to increased electricity costs at the Project resulting from the repairs. Since DBK began its repairs, UDR estimates it has incurred in excess of $135,000 in damages related to issues with tenants and approximately $6,600 in additional electrical utility expenses.

25. UDR's damages outlined above are the direct result of Zaremba's breach of its obligations under the Development Agreement, as well as Zaremba Contractors' breach of the June 2009 Agreement. Further, the damages incurred by UDR are the direct result of the negligence of Zaremba Contractors and/or its subcontractors in the construction of the Project. In addition, Zaremba and Zaremba Contractors have breached their indemnity obligations because they have failed and refused to reimburse UDR for its damages.

## V.
## FIRST CAUSE OF ACTION
### Breach of Contract - Zaremba

26. The Development Agreement required Zaremba, in part, to ensure that the construction of the Project was completed: (i) in accordance with Urban Studio's plans and specifications, (ii) in a good and workmanlike manner; and (iii) with first-class materials. In addition, Zaremba agreed to be responsible for the duties and obligations set forth in the Development Agreement related to the development, design, and construction of the Project,

both before and after UDR's purchase of the Project. Zaremba failed to comply with all of its duties and obligations under the Development Agreement, which directly resulted in numerous defects in the construction of the Project and other damages to UDR. For instance, the Development Agreement required Zaremba to provide UDR with a valid warranty from the roofing manufacturer but Zaremba did not provide UDR with this warranty.

27. As a result of Zaremba's breaches of the Development Agreement, UDR has incurred damages to repair the construction defects, including costs related to experts, supervision by UDR employees, and additional electrical utility costs at the Property. In addition, the repair of the construction defects has caused UDR to incur damages related to tenants terminating leases, declining to renew leases, and demanding rent abatements. UDR estimates that its total damages will exceed $3,250,000.

## VI.
## SECOND CAUSE OF ACTION
### Breach of Contract – Zaremba Contractors

28. In the June 2009 Agreement, Zaremba Contractors agreed that it would complete the construction of the Project in accordance with Urban Studio's plans and specifications, and in accordance with its construction contract with Zaremba. Zaremba Contractors breached the June 2009 Agreement because it failed to construct the Project in accordance with Urban Studio's plans and specifications. In addition, on information and belief, Zaremba Contractors failed to construct the Project in accordance with its construction contract with Zaremba.

29. Zaremba Contractors' breach of the June 2009 Agreement resulted in numerous defects in the construction of the Project. Further, as a result of Zaremba Contractors' breach of the June 2009 Agreement, UDR has incurred damages to repair the construction defects, including additional electrical costs at the Property, and costs related to experts and supervision

by UDR employees.  In addition, the repair of the construction defects has caused UDR to incur damages related to tenants terminating leases, declining to renew leases, and demanding rent abatements.  UDR estimates that its total damages will exceed $3,250,000.

## VII.
## THIRD CAUSE OF ACTION
### Breach of Indemnity – Zaremba and Zaremba Contractors

30. In the Development Agreement, Zaremba agreed to indemnify UDR for damages that UDR incurred as a result of the construction or development of the Project.  Likewise, on information and belief, the construction contract between Zaremba and Zaremba Contractors required Zaremba Contractors to indemnify UDR for damages related to the negligence of Zaremba Contractors and its subcontractors in constructing the Project.

31. Despite notice and demand from UDR, neither Zaremba nor Zaremba Contractors has indemnified UDR or accepted responsibility for the repair of the construction defects at the Project.  Zaremba' and Zaremba Contractors' actions constitute a breach of their respective indemnity obligations to UDR.  UDR seeks recovery from Zaremba and Zaremba Contractors for all damages incurred by UDR as a result of the construction defects, including, without limitation, damages related to repair of the construction defects, including additional electrical costs at the Property, and costs related to experts and supervision by UDR employees.  UDR also seeks all damages UDR has incurred related to tenants terminating leases, declining to renew leases, and demanding rent abatements.  UDR estimates that its total damages will exceed $3,250,000.

# VIII.
# FOURTH CAUSE OF ACTION
## Negligence – Zaremba Contractors

32. Zaremba Contractors owed UDR a duty to exercise the reasonable degree of care and skill that is exercised by other contractors providing substantially similar services in constructing the Project, including adequately supervising the work of its subcontractors. Zaremba Contractors failed to exercise that degree of care and skill in constructing the Project and, thus, breached its duty to UDR. Zaremba Contractors' actions constitute negligence, and that negligence is a direct and proximate cause of the damages incurred by UDR in the case.

33. UDR seeks recovery from Zaremba Contractors of all damages incurred by UDR as a result of the construction defects at the Project caused by Zaremba Contractors and/or its subcontractors. UDR's damages include, without limitation, damages related to repair of the construction defects, including additional electrical costs at the Property, and costs related to experts and supervision by UDR employees. UDR also seeks all damages UDR has incurred related to tenants terminating leases, declining to renew leases, and demanding rent abatements. UDR estimates that its total damages will exceed $3,250,000.

# IX.

## ATTORNEYS' FEES

34. As a result of the actions of Zaremba and Zaremba Contractors complained of in this Original Complaint, UDR has been forced to hire the law firm of Winstead PC to pursue recovery of the damages caused by Zaremba and Zaremba Contractors. UDR seeks a judgment from the Court awarding UDR all of the reasonable and necessary attorneys' fees incurred by UDR in attempting to recover its damages for the wrongful actions of Zaremba and Zaremba Contractors as set forth herein.

# X.

# CONDITIONS PRECEDENT

35. All conditions precedent to UDR bringing this lawsuit have occurred or have been performed.

# XI.

# PRAYER

UDR respectfully requests that the Court award UDR:

a. all damages incurred by UDR for Zaremba's breach of its agreements with UDR;

b. all damages incurred by UDR for Zaremba Contractors' breach of the June 2009 Agreement;

c. all damages incurred by UDR for Zaremba's and Zaremba Contractors' breach of their indemnity obligations;

d. all damages incurred by UDR for Zaremba Contractors' negligence;

e. prejudgment and post-judgment interest at the highest rate allowed by law;

f. all costs of court;

g. all expert fees and reasonable and necessary attorneys' fees incurred by UDR; and

h. all other relief to which UDR may be legally or equitably entitled.

Respectfully submitted,

WINSTEAD PC


By: _s/ Dale E. Butler_____
    Dale E. Butler
    Texas State Bar No. 00792388
    WINSTEAD PC
    777 Main Street, Suite 1100
    Fort Worth, Texas 76102
    Phone: (817) 420-8200
    Fax: (817) 420-8201
    Email: dbutler@winstead.com

    and

    Kristen L. Sherwin
    Texas State Bar No. 24043918
    5400 Renaissance Tower
    1201 Elm Street
    Dallas, Texas 75270
    Phone: (214) 745-5392
    Fax: (214) 745-5390
    Email: ksherwin@winstead.com

    ***ATTORNEYS FOR PLAINTIFF,***
    ***UDR OF TENNESSEE, L.P.***

&JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UDR of Tennessee, L.P.

## DEFENDANTS
MDG Zaremba Sammytown, LLC and
Zaremba Contractors, LLC

(b) County of Residence of First Listed Plaintiff  Douglas County, CO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Cuyahoga County, OH
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Dale E. Butler, Winstead PC
777 Main St., Suite 1100
Fort Worth, TX 76102 (817) 420-8247

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Breach of Contract and Negligence related to development and construction of apartment complex

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Current Estimate - $3,250,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED: (See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE  June 8, 2012
SIGNATURE OF ATTORNEY OF RECORD  /s/ [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____