UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UDR OF TENNESSEE, L.P.,

      Plaintiff,

v.                        Case No. 8:12-cv-2462-T-33AEP

MDG ZAREMBA SAMMYTOWN, LLC,
et al.,

      Defendants.
_____/

**ORDER**

    This matter comes before the Court pursuant to Defendant Water Management Consultants & Testing, Inc.'s Motion to Dismiss Counts XI, XII and XIII of Plaintiff's Third Amended Complaint (Doc. # 178), filed on January 27, 2014. Plaintiff UDR of Tennessee, L.P. filed a response in opposition to the Motion on February 10, 2014. (Doc. # 206). For the reasons stated below, the Court grants the Motion. However, UDR's action against Water Management is dismissed without prejudice so that UDR may have an additional opportunity to state a claim, if possible.

**I.  Background**

    MDG Zaremba Sammytown, LLC, was the owner of real property located in Tampa, Florida ("the Property"). (Doc. #

122 at ¶ 9). In February of 2007, MDG Zaremba Sammytown, LLC entered into a purchase and sale agreement with DCO Realty, Inc., a UDR related entity. (Id. at ¶ 10). MDG Zaremba Sammytown, LLC and DCO Realty, Inc. executed an amended purchase and sale agreement in August of 2008. (Id. at ¶ 11). According to the third amended complaint, the original agreement and the amended agreement are collectively referred to as the development agreement. (Id.).

Subsequent to signing the development agreement, DCO Realty, Inc. assigned the development agreement to UDR. (Id. at ¶ 13). Pursuant to the development agreement, "UDR agreed to purchase the Property from [MDG Zaremba Sammytown, LLC]. In exchange, [MDG Zaremba Sammytown, LLC] not only agreed to convey the Property but to perform other functions including, but not limited to, serving as the developer and management agent to organize, coordinate, and administer the design and construction of the apartment complex on the Property. . . ("the Project")." (Id. at ¶ 14).

Prior to the execution of the development agreement, in 2006, MDG Zaremba Sammytown, LLC entered into a design contract with Urban Studio Architects, Inc., which appointed Urban Studio as the project architect for the Project. (Id. at ¶ 15). Pursuant to the design contract, "Urban Studio was

2

to provide waterproofing design and plan review consultant services and [MDG Zaremba Sammytown, LLC] was to engage, and did engage, Water Management to provide waterproofing consultant site construction and oversight services." (Id. at ¶ 16). According to the third amended complaint, the agreement between MDG Zaremba Sammytown, LLC and Water Management "may have been an oral agreement the terms and conditions of which were consistent with and/or memorialized in a [l]etter of [u]nderstanding." (Id. at ¶ 17).

Thereafter, in 2007, MDG Zaremba Sammytown, LLC entered into a construction contract with Zaremba Contractors, LLC, a general contractor and MDG Zaremba Sammytown, LLC "affiliate" as defined in the development agreement, who served as the general contractor for the Project. (Id. at ¶¶ 18-19). The construction contract contained a requirement that Zaremba Contractors, LLC indemnify MDG Zaremba Sammytown, LLC, and by extension UDR, via the construction documents, for any and all damages or losses sustained as a result of defective and non-conforming work. (Id. at ¶ 23).

According to the third amended complaint, MDG Zaremba Sammytown, LLC, Urban Studio, Water Management, Zaremba Contractors, LLC and its subcontractors were obligated,

through the development agreement, to design and construct the Project for the express benefit of UDR. (Id. at ¶ 20).

During the course of construction of the Project, some of Zaremba Contractors, LLC's subcontractors and suppliers filed liens against the Property. (Id. at ¶ 28). This led to the execution of an agreement in June of 2009 between UDR, MDG Zaremba Sammytown, LLC, Zaremba Contractors, LLC, and Zaremba Group, LLC – a MDG Zaremba Sammytown, LLC "affiliate" - which incorporated in part the terms of the development agreement. (Id. at ¶¶ 28-29). Pursuant to the June of 2009 agreement, MDG Zaremba Sammytown, LLC, Zaremba Contractors, LLC and Zaremba Group, LLC "made certain express guaranties and/or warranties to UDR including, but not limited to, guaranteeing that [Zaremba Contractors, LLC] would complete the construction on the Project in accordance with the Project's plans and specifications, and would otherwise perform its obligations pursuant to the [d]evelopment [a]greement and related construction documents." (Id. at ¶ 30).

In July of 2009, Urban Studio issued a certificate of substantial completion and declared the Project substantially completed. (Id. at ¶ 31). Around this time, several roof leaks were discovered on the Project, and the repairs of the leaks

were incorporated into the "punch list" of MDG Zaremba Sammytown, LLC. (Id. at ¶ 32). MDG Zaremba Sammytown, LLC or Zaremba Group, LLC directed Zaremba Contractors, LLC to investigate and correct the punch list items. (Id. at ¶ 33). In turn, Zaremba Contractors, LLC directed its roofing subcontractor – Quality Roof Systems, Inc. – to investigate and correct the punch list items. (Id.).

In late 2009, UDR discovered additional roof leaks and water damage to the Project and provided notice and an opportunity to cure to MDG Zaremba Sammytown, LLC, Zaremba Group, LLC and Zaremba Contractors, LLC. (Id. at ¶ 34). UDR attempted to notify Quality Roof Systems, Inc. and provide it with an opportunity to cure but UDR was unsuccessful, in part, because Quality Roof Systems, Inc. was no longer in business. (Id. at ¶ 35). UDR also notified the roofing materials manufacturer – GAF – of the roof leaks and requested that GAF inspect the roof conditions. (Id. at ¶ 36).

GAF inspected the conditions and informed UDR that the GAF warranty provided by MDG Zaremba Sammytown, LLC for the Project was "invalid and/or inapplicable and disclaimed any responsibility for the defective roofing conditions and resultant damage." (Id. at ¶ 37). Thereafter, additional leaks were discovered throughout the Property and additional

5

notices and opportunities to cure were provided by UDR. (Id. at ¶ 38). According to UDR, "[d]espite multiple inspections, [MDG Zaremba Sammytown, LLC, Zaremba Group, LLC and Zaremba Contractors, LLC], failed and/or refused to properly inform UDR of the nature and scope of the problems or take any action to repair, restore or replace the defective conditions and resultant damages." (Id. at ¶ 39).

As a result, UDR retained Building Engineering Consultants, Inc. and RJH & Associates, Inc. to investigate and report on the cause and scope of the roof leaks and the ongoing damage. (Id. at ¶ 40). During the course of the inspections, Building Engineering Consultants, Inc. and RJH & Associates, Inc. discovered multiple latent defects and code violations, which were causing and significantly contributing to water infiltration and damage. (Id. at ¶¶ 41-43). In order for the Project to comply with the original plans and specifications, Building Engineering Consultants, Inc. opined that the defective conditions and damages must be "restored, repaired and/or replaced." (Id. at ¶ 44).

UDR notified MDG Zaremba Sammytown, LLC, Zaremba Group, LLC and Zaremba Contractors, LLC of the defective conditions identified within the Building Engineering Consultants, Inc. report and of the need to proceed with the recommended

restoration, repair and replacement work. (Id. at ¶ 45). UDR submits that representatives of MDG Zaremba Sammytown, LLC, Zaremba Group, LLC and Zaremba Contractors, LLC inspected the Project but refused to acknowledge their responsibility for the defective conditions and damages. (Id. at ¶ 46).

As a result, UDR hired DBK Construction Group, Inc. to restore, repair and replace the defective conditions and resultant damages. (Id. at ¶ 47). During the course of DBK Construction Group, Inc.'s work, Building Engineering Consultants, Inc. and UDR identified additional defective conditions and damages. (Id. at ¶¶ 48-49). Consequently, UDR contends that it "has incurred and continues to incur significant damages including, but not limited to, the cost to restore, repair and replace the defective and nonconforming work and resultant damage to other property and building components." (Id. at ¶ 51).

UDR initiated this action on June 8, 2012, originally against MDG Zaremba Sammytown, LLC and Zaremba Contractors, LLC. (Doc. # 1). Thereafter, UDR filed an amended complaint on January 29, 2013, adding Zaremba Group, LLC as a Defendant to this action (Doc. # 25), and a second amended complaint on March 28, 2013, adding Urban Studio as a Defendant (Doc. #

94). On December 4, 2013, UDR filed a third amended complaint adding Water Management as a party Defendant. (Doc. # 122).

Water Management filed the present Motion on January 27, 2014. (Doc. # 178). UDR filed a response in opposition to the Motion on February 10, 2014. (Doc. # 206). The Court has reviewed the Motion, and the response thereto, and is otherwise fully advised in the premises.

## II.  Legal Standard

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

As a threshold matter, the Court notes that Water Management's Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings. When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(d) requires that the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56. "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a]

copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002)(quoting Fed. R. Civ. P. 7(a) and 10(c)); <u>see</u> <u>GSW, Inc. v. Long Cnty, Ga.</u>, 999 F.2d 1508, 1510 (11th Cir. 1993)(stating that when considering a motion to dismiss, "the Court limits its consideration to the pleadings and exhibits attached thereto.").

The Court notes that UDR attached to its third amended complaint, as exhibits, various contractual agreements entered into for the Project. The Court has considered the attached exhibits, but has not considered any other documents in making its determination.

## III. **Analysis**

In the Motion, Water Management seeks to dismiss Counts XI, XII and XIII of UDR's third amended complaint, or in the alternative, requests UDR provide a more definite statement.

### A. **Count XI – Negligence**

Under Florida law, the elements of a negligence cause of action are "(1) legal duty owed by defendant to plaintiff; (2) breach of that duty by defendant; (3) an injury to plaintiff legally caused by defendant's breach; and (4)

damages as a result of the injury." <u>Paterson v. Deeb</u>, 472 So.
2d 1210, 1214 (Fla. 1st DCA 1985).

### 1. <u>Duty</u>

Water Management contends that UDR's third amended
complaint contains merely conclusory allegations insufficient
to establish that Water Management owed a duty to UDR under
Florida negligence principles. (Doc. # 178 at 5). According
to Water Management, "it is clear that [UDR] was not involved
in the Project until over a year after the date on the
[l]etter of [u]nderstanding between Water Management and
Zaremba Land Development, LLC." (<u>Id.</u> at 6). In fact, neither
MDG Zaremba Sammytown, LLC, nor UDR are parties to the letter
of understanding. (<u>Id.</u>). Furthermore, Water Management
contends that it was not a party to the development agreement
entered into between DCO Realty, Inc. and MDG Zaremba
Sammytown, LLC, which was later assigned to UDR. Therefore,
Water Management submits that the complaint fails to
establish how Water Management owed a duty to UDR or how a
special relationship, which gives rise to a duty, existed
between UDR and Water Management.

In response, however, UDR contends that Water Management
assumed the duty, regardless of contractual privity, to
provide waterproofing services for the original construction

of the Project. (Doc. # 206 at 5). Namely, UDR contends that
Nicholas Husak, acting on behalf of MDG Zaremba Sammytown,
LLC, executed a contract with Urban Studio, where Urban Studio
was to provide waterproofing design and consultant services
and MDG Zaremba Sammytown, LLC sought waterproofing
consultant services from Water Management. (Id. at 8-9).
Therefore, UDR submits that it can be inferred that MDG
Zaremba Sammytown, LLC engaged Water Management for the
benefit of MDG Zaremba Sammytown, LLC and by extension, UDR.
(Id. at 9). Thus, it is UDR's position that Water Management,
through its contract with MDG Zaremba Sammytown, LLC, had a
duty to provide waterproofing consultant site construction
and oversight services to UDR. (Id.).

When reviewing Water Management's Motion, this Court
must take the factual allegations in UDR's third amended
complaint as true. In the third amended complaint, UDR
contends that "the [d]evelopment [a]greement expressly
obligated . . . [Water Management] . . . to design and/or
construct the Project for the express benefit of UDR. [Water
Management] . . . knew and/or should have known [it was]
performing [its] respective services and work for the
ultimate benefit of UDR." (Doc. # 122 at ¶ 20). The Court
acknowledges Water Management's arguments, however, the Court

12

finds that those arguments are better raised on summary judgment. At this juncture, the factual allegations provided in the third amended complaint, when taken as true, are sufficient to allege that Water Management owed a duty to design and construct the Project through waterproofing consultant site construction and oversight services for the benefit of UDR, and in turn, survive a motion to dismiss.

### 2. **Breach**

In the Motion, Water Management submits that UDR's complaint only provides vague allegations that Water Management breached the alleged duty it owed to UDR. (Doc. # 178 at 9). Specifically, UDR alleges that Water Management had some "general duty of care to 'properly and adequately perform its services . . . with the degree of skill, care and diligence that is commonly exercised by other members of the profession under similar circumstances in Hillsborough County for the consultant and inspection services relating to the construction of an improvement to real property.'" (Id.). Such sparse allegations, according to Water Management, fail to provide sufficient notice to Water Management of the nature of the alleged breach and the harm that allegedly resulted therefrom in order for Water Management to draft a responsive pleading. (Id.).

In response, however, UDR contends that the factual allegations sufficiently demonstrate that Water Management breached its duty owed to UDR "through, among other things, its negligent inspections, actions and omissions . . . resulting in and/or significantly contributing to the existence of latent construction defects in the building envelope." (Doc. # 206 at 11).

In the third amended complaint, UDR alleges:

> [Water Management] breached its duty to properly and adequately perform its services and/or failed, by certain errors and/or omissions, to exercise the degree of skill, care and diligence that is commonly exercised by other members of the profession under similar circumstances in Hillsborough County for the consultant and inspection services relating to the construction of an improvement to real property.

(Doc. # 122 at ¶ 116). UDR's allegations are similar to those made by the plaintiff in Recreational Design & Construction, Inc. v. Wiss, Janney, Elstner Associates, Inc., 820 F. Supp. 2d 1293, 1301 (S.D. Fla. 2011), in an attempt to plead breach of an alleged duty:

> [Defendants] breached their duty for reasons including, but not limited to (1) failing to exercise that degree of care and skill as would be exercised by other reasonably skilled engineers practicing in the State of Florida, in particular

> South Florida, under the same or similar
> circumstances. . . .

Id. at 301. The court in Recreational Design & Construction, Inc. found that "these allegations, which merely restate the relevant test for breach under Florida law, are exactly the type of allegations prohibited by binding case law." Id.; see Twombly, 550 U.S. at 555. This Court agrees and finds that UDR's allegations, which also merely state the alleged duty of care Water Management owed to UDR, are likewise insufficient to satisfy the pleading requirements of the Federal Rules of Civil Procedure.

Furthermore, the allegations cited by UDR in its response to support its contention that it sufficiently stated a claim for breach, are unpersuasive. Namely, the cited factual allegations do not mention Water Management or specify how Water Management breached its alleged duty owed to UDR. Instead, UDR's cited allegations focus on the actions of MDG Zaremba Sammytown, LLC, Zaremba Group, LLC, Zaremba Contractors, LLC, Quality Roof Systems, Inc. and GAF. Therefore, the Court finds that Water Management has failed to adequately allege a claim for negligence as the element of breach is insufficiently pled. Accordingly, Water Management's Motion is granted as to Count XI.

## B. **Count XII - Breach of Contract**

In the third amended complaint, UDR asserts Count XII – breach of contract – as an assignee and/or third-party beneficiary. A cause of action for breach of contract has three elements: "(1) a valid contract, (2) a material breach, and (3) damages." Havens v. Coast Fla., P.A., 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013). Furthermore, to establish an action for breach of a third-party beneficiary contract, a third-party beneficiary plaintiff must establish: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." Networkip, LLC v. Spread Enters., Inc., 922 So. 2d 355, 358 (Fla. 3d DCA 2006) (citing Biscayne Inv. Group, Ltd. v. Guar. Mgmt. Servs., Inc., 903 So. 2d 251, 254 (Fla. 3d DCA 2005)). "To find the requisite intent, it must be established that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party." Clark & Co. v. Dep't of Ins., 436 So. 2d 1013, 1016 (Fla. 1st DCA 1983). The Court will first determine whether UDR has

16

sufficiently alleged a claim for breach of a third-party beneficiary contract.

Water Management submits that at the time the letter of understanding was executed – in 2007 - neither Zaremba Land Development, LLC nor Water Management could have intended UDR would be a third-party beneficiary as UDR entered into the development agreement with MDG Zaremba Sammytown, LLC on August 26, 2008. (Doc. # 178 at 12). Therefore, according to Water Management, UDR fails to provide sufficient factual allegations to state a claim for breach of a third-party beneficiary contract.

UDR claims, however, that pursuant to the development agreement MDG Zaremba Sammytown, LLC was to have secured third-party beneficiary status in favor of UDR in downstream contracts and to otherwise obtain for UDR's benefit "standard and customary construction warranties and guaranties from all persons providing goods and/or services in connection with the construction and installation of [i]mprovements." (Doc. # 122 at ¶ 22). Therefore, according to UDR, as a third-party beneficiary, "[UDR's] contractual rights against Water Management are reasonably inferable and 'plausible' based upon MDG Zaremba Sammytown, LLC's assignment of rights to UDR, and alternatively, its obligations to identify UDR as a

17

third-party beneficiary in downstream contracts." (Doc. # 206 at 14).

Upon review of the third amended complaint, this Court initially finds that UDR has failed to specify the contract to which UDR is an alleged third-party beneficiary. Instead, UDR proceeds to provide the Court with how Water Management breached this unspecified contract, without establishing the prerequisites to this claim. The Court assumes, however, for the sake of the present analysis, that UDR is referencing the letter of understanding entered into between Zaremba Land Development, LLC and Water Management.

Nonetheless, even if UDR is referencing the letter of understanding, UDR has likewise failed to allege that both contracting parties – Water Management and Zaremba Land Development, LLC – had a clear and manifest intent that the letter of understanding primarily and directly benefit UDR - the purported third-party beneficiary. Although UDR has sufficiently alleged the necessary intent on behalf of Zaremba Land Development, LLC – a MDG Zaremba Sammytown, LLC affiliate - this Court finds that UDR has failed to adequately demonstrate that Water Management had the same intent. Therefore, this Court finds that UDR has failed to state a claim for breach of a third-party beneficiary contract.

18

Furthermore, as previously stated, UDR asserts its breach of contract claim in the alternative as an assignee. In the third amended complaint, UDR contends that "[s]ubsequent to the signing of the amended [purchase and sale] agreement, DCO Realty assigned the [d]evelopment [a]greement to its related entity UDR. . . ." (Doc. # 122 at ¶ 13). This "general assignment" is evidenced in Exhibit F attached to the third amended complaint. (Doc. # 122-6). Taking UDR's allegations in the third amended complaint as true, this Court finds that UDR has sufficiently established the existence of a valid contract – the general assignment – to which UDR was an assignee.

However, upon further review, the Court finds that in the third amended complaint UDR fails to allege how Water Management breached this general assignment contract. Namely, in Count XII, the only allegation of breach focuses on the letter of understanding between Zaremba Land Development, LLC and Water Management, not the general assignment contract. Therefore, the Court finds that UDR has failed to sufficiently allege, as an assignee, a claim for breach of contract.

As UDR has failed to sufficiently allege a claim for breach of contract as an assignee and a third-party

beneficiary, Water Management's Motion is granted as to Count XII.

### C. **Count XIII - Breach of Warranty**

In the third amended complaint, UDR submits that Water Management "knowingly, expressly and/or impliedly warranted to UDR that it would perform its professional services consistent with the professional skill and care commonly exercised by other members of its profession in and around Hillsborough County, Florida." (Doc. # 122 at ¶ 126). Water Management contends in its Motion, however, that as UDR has failed to identify what type of warranty Water Management has allegedly breached, Water Management is unable to form a responsive pleading to Count XIII. Accordingly, Water Management submits that UDR has failed to state a cause of action for breach of warranty. The Court agrees.

Pleadings of this nature violate Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Because UDR's third amended complaint fails to provide a plain statement of its breach of warranty claim, specifically what type of warranty was allegedly breached by Water Management, the Court grants Water Management's Motion to Dismiss as to Count XIII.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Water Management Consultants & Testing, Inc.'s Motion to Dismiss Counts XI, XII and XIII of the Third Amended Complaint (Doc. # 178) is **GRANTED**.

(2)   Plaintiff UDR of Tennessee, L.P. has until March 13, 2014, to file a fourth amended complaint.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of February, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record